ELLIS, Judge:
This is a suit by Cohn Realty Co., Inc. against Hardy Wells, Jr. for rent allegedly due, and for damages done to a warehouse formerly leased by defendant from plaintiff. After trial on the merits, judgment was rendered in favor of plaintiff for $9,000.00, and defendant has appealed. Plaintiff has answered the appeal, asking that the award be increased.
Plaintiff and defendant entered into a lease covering a warehouse building on Europe Street in Baton Rouge, for a term of two years, beginning February 1, 1974, and ending January 31,1976. The lease was the third by the same parties, covering the same property, defendant having been in possession of the property as lessee since September, 1968, paying a rental of $1,000.00 per month.
The lease contained the following provisions:
“At the termination hereof, Tenant hereby binds and obligates themselves to deliver up and return to Lessor the said Leased premises and appurtenances, with all things thereunto belonging, in equal good order as received, the usual wear and tear accepted.
“The leased premises and all of the fixtures and appurtenances thereunto belonging and appertaining, including elevator, glass, locks, keys and other fastenings are received as is by Tenant without any obligation on the part of Lessor to repair same during the term of this lease. No representations, agreements, or promises except such as are contained herein, or indicated by rider or endorsement hereon, have been made to Tenant respecting the condition of said premises, or respecting the rights or obligations of the respective parties in the premises. Tenant is bound to pay for the repairs of any injuries to the leased premises, or any other part of the building, done by Tenant or by any of Tenant’s agents, servants or visitors, and for any breakage of glass, however, caused, and for any dam *515 age, to whomsoever occuring, caused by the overflow or escape of water, steam, gas, electricity in or from the leased premises, and resulting from Tenant’s negligence, or that of Tenant’s agent, servants or visitors.
“Lessor will keep the roof on said building in good condition during the term of this lease. Tenant shall keep the balance of said building, including all installations and facilities, such as plumbing, heating, wiring, sprinkler system, etc., in good condition during the term of this lease.”
sfc * * 5k *
“As a further consideration, without which this agreement of lease would not have been executed by Lessor, Tenant agrees and binds and obligates themselves to so use the premises herein leased that the second floor shall not be loaded to exceed a greater stress than would be produced by a uniformly distributed load of one hundred sixty (160) pounds per square foot; and should Tenant fail to comply with the provisions of this paragraph, such failure shall be considered as a violation of the terms, covenants and conditions hereof.
“It is especially understood and agreed by and between the parties hereto that with respect to the elevator now in use in the building, herein leased, the Lessor shall be under no obligation or duty to keep the said elevator in repair or running condition, nor be responsible for its safety or continued operations, the operation, maintenance and condition of the said elevator to be at the sole risk of the Tenant.”
In late 1975, Mr. Wells advised plaintiff that he would not renew the lease at its expiration on January 31, 1976. He was unable to remove all of the property stored in the warehouse by that time, and, by mutual agreement, was to pay $1,000.00 per month until he had vacated the premises. The record shows that he did not remove the last of the items stored there until August, 1976.
This suit was filed in June, 1976, claiming rent, as per the agreement, and asking for damages arising from defendant’s alleged breach of the maintenance provisions of the lease. Plaintiff alleged that Mr. Wells had failed to repair various broken windows and broken floors in the warehouse. In addition plaintiff claimed damages for having to remove debris and for the repair of the freight elevator in the warehouse. There was also a catch-all allegation that the warehouse was in worse condition at the expiration of the lease than when delivered to the defendant.
The evidence showed that the building leased was well over 50 years old, and showed signs of deterioration. It is uncon-troverted that, at the expiration of the lease, there were a number of broken windows, and a number of holes in the wooden floor, both upstairs and downstairs.
Plaintiff put on evidence to show that it had performed and paid for extensive repairs during the term of the lease, for which it is contended defendant is responsible under the terms thereof. It also put on evidence to show that further repairs were needed after defendant vacated the warehouse.
Defendant apparently admits that he is liable for something in this case. However, he testified that, before executing the last lease, he had told plaintiff’s representative that he did not have the money to make any repairs to the warehouse. He further testified that the work done by plaintiff in 1975 and 1976 had been done without any notice to or consultation with him, and that nothing had been said to him about paying for it.
Robert Rosenthal, who managed the property for plaintiff, testified that he had discussed the proposed repairs with defendant, and that defendant had agreed to pay half of the expense thereof. ' In this suit, however, plaintiff is attempting to recover the entire amount of the said repairs, under the terms of the lease. Mr. Rosenthal admitted that no demand had been made on defendant for the cost of repairs, prior to this suit.
*516 The major factual contention relates to the determination of what repairs were necessitated by abuse of the property by defendant, or those for whom he is responsible, and what repairs were necessitated by normal wear and tear or by the age of the building.
Plaintiff showed that work was performed on the building in 1975 which cost a total of $4,778.00. Other work done in March of 1976 cost $3,097.00. This work included chipping away eight inches of a concrete railroad loading platform which had been improperly built in 1975. It was estimated that approximately $5,000.00 would be required to put the freight elevator into proper operating condition. Finally, it was testified that it would cost $7,073.59 to do the same work in 1977 which cost $4,778.00 in 1975. There is no testimony as to how much of this work was, in fact, necessary at the later date.
Except for the repairs to the elevator, it is impossible to tell from the record how much of the work done by plaintiff was necessitated by abuse and how much by normal wear and tear. It is clear from the record that, except for the outer walls and roof, the warehouse was in a dilapidated condition.
The trial judge found that plaintiff had failed to prove that the 1975 and 1976 repairs were necessitated by abusive use by defendant. We find no manifest error in this conclusion. He did award $700.00 for the replacement of the window panes during the course of the lease, as well as those which were missing after the defendant left the premises. He gave $500.00 for repairs to the flooring which he, after his inspection of the premises, found to be necessitated by abuse rather than normal wear and tear. We find no manifest error in either of these conclusions.
The record is clear that, at the time defendant took over the lease in 1968, the elevator was in good working order, with all gates and doors intact. To bring it back to that condition at the end of the lease would cost approximately $5,000.00, according to a representative of the Otis Elevator Company who inspected the elevator. The trial judge awarded that amount. Although the estimate was approximate, and not a firm bid, it appears from the record that it is minimal. We therefore find no error in awarding this amount.
Finally, on the question of rent, defendant complains that none should be awarded, because he was prevented from moving out because he could not bring a railroad car up to the improperly constructed platform. However, the platform was repaired in March, 1976, and defendant was not completely out until August. The contention is without merit.
Plaintiff complains because the trial judge deducted from the rent the sum of $300.00 per month received from a new tenant of a portion of the building during the last four months defendant was in the building. There is no merit to the contention. Plaintiff can only collect his rent once. Defendant’s contention that he is entitled to two more months credit is likewise without merit. The only reference to earlier occupancy by the new tenant is in the answers to interrogatories, which were not in evidence. The testimony is otherwise.
The judgment appealed from is therefore affirmed. Costs of this appeal shall be equally shared by the parties. Defendant shall pay all costs in the court below.
AFFIRMED.